UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| William Woebkenberg <br><br> Plaintiff, <br><br> v. <br><br> Aramco Services Company, a Delaware Corporation <br><br> Defendant. | Case No. <br><br> Hon. |

## COMPLAINT AND JURY DEMAND

Plaintiff William Woebkenberg ("Woebkenberg"), by and through his attorneys, complains of Defendant Aramco Services Company ("ASC" or "Company") as follows:

### Parties, Jurisdiction, and Venue

1. This is a civil action brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, ("ADEA") and the Elliott Larsen Civil Rights Act, MCL §§ 37.2101 *et seq.* ("ELCRA") alleging unlawful age discrimination and retaliation and common law fraud in the inducement.

2. Plaintiff Woebkenberg is a resident of Canton, Michigan.

1

3.     ASC is a corporation organized and existing under the laws of Delaware, registered to do business in Michigan, with its headquarters in Houston, Texas.

4.     ASC is the United States-based subsidiary of Saudi Aramco, the state-owned oil company of the Kingdom of Saudi Arabia, which is a fully integrated, global petroleum and chemicals enterprise.

5.     Key events pertaining to this matter occurred in the Eastern District of Michigan; therefore, venue is appropriate in this Court.

6.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions and 28 U.S.C. §§ 1343(a)(3) and (4), which authorize federal courts to hear civil rights cases.

7.     This Court has jurisdiction pursuant to 38 U.S.C. § 1367 over the state-law claim arising from the same core operative facts as the federal questions.

8.     Woebkenberg filed a timely charge with the EEOC asserting age discrimination and retaliation and on January 28, 2020, the EEOC issued a Notice of Right to Sue.

9.     This lawsuit is filed within 90 days of Woebkenberg's receipt of his Right-to-Sue notice.

2

## Statement of Facts

10.    Woebkenberg is 54 years old and was 49 years old when he was hired by the Company in September 22, 2014.

11.    Woebkenberg performed his duties at the ASC's Detroit Research Center located in Novi Michigan.

12.    In March 2009, Woebkenberg was hired by Mercedes Benz as its United States Manager of US Fuels Technical and Regulatory Affairs.

13.    In this capacity, Woebkenberg had technical interface with ATSM, CRC and other related associations to improve fuel quality standards and promote fuels/combustion/powertrain research in advanced combustion and global powertrain trends.

14.    Woebkenberg received the highest possible ratings in his performance reviews at Mercedes Benz; therefore, he held a very secure position with Mercedes Benz.

15.    In March of 2014, Woebkenberg was contacted by Steve Przesmitzki, who had been a former colleague while both were previously employed at Ford Motor Company.

16.    Woebkenberg at first was not interested in leaving Mercedes Benz.

17. However, Przesmitzki had just joined ASC and was actively recruiting qualified candidates for specific openings on his staff at ASC.

18. Through phone discussions and email correspondence regarding the nature of the position and compensation, Przesmitzki and ASC HR Representative Mary Sizemore, pursued Woebkenberg between March 2014 and September 2014.

19. Woebkenberg was impressed by the representations Przesmitzki and Sizemore made to him, that pay raises at ASC have always been between 4 and 6 %.

20. These representations struck Woebkenberg as legitimate, because he knew that there were other players in his industry that compensated employees like him with this kind of annual raise.

21. These high raises, as well as his prior dealings with Przesmitzki, motivated Woebkenberg to consider the ASC offer.

22. In particular, when Woebkenberg considered the salary ASC offered in light of the 4 to 6% annual raises, he decided that the offer was sufficient to justify leaving the security of the Mercedes Benz position for ASC.

23. However, at no time during his tenure at ASC did Woebkenberg receive a raise as high as 4%.

24.   Rather, Woebkenberg's raises were mostly close to 1% and the highest he received was 3%.

25.   Additionally, during his tenure at ASC, Woebkenberg never heard of anyone at ASC in the Detroit area receiving raises of 4 to 6%.

26.   Woebkenberg was hired by ASC in September 2014 as a Transport Fuels Technical and Regulatory Specialist.

27.   At ASC, Woebkenberg led technical outreach for ASC. Woebkenberg' s duties included outreach activities to technical organizations such as API, ASTM, CRC, SAE and DOE.

28.   These duties included monitoring and interacting these Regulatory bodies on technical affairs such as next generation fuel and engine requirements, fuel, chemistry, emission impacts, fuel stability and infrastructure considerations.

29.    David Cleary ("Cleary") was the Director of the Novi site where Woebkenberg was hired to work.

30.   Cleary did not play a central role in hiring Woebkenberg.

31.   Shortly after Woebkenberg was hired, Cleary expressed misgivings about ASC having hired him.

32.   Woebkenberg reported to Steve Przesmitzki, who, at that time reported to Cleary.

33. Woebkenberg' s base salary at time of termination was $161,880 plus annual bonuses and a substantial fringe benefit package.

34. ASC maintained a formal executive evaluation process. The highest designation was Superior, followed by Excellent, Meets Objectives and Does Not Meet Objectives.

35. Woebkenberg was evaluated by David Cleary for the period of September 22, 2014 to December 31, 2014.

36. He received an "Excellent" rating in this evaluation.

37. At the Company holiday party in December 2014, Cleary mentioned to Plaintiff's wife, Celeste Woebkenberg, that "Bill [Woebkenberg]was very expensive to hire."

38. Plaintiff also heard Cleary make this statement.

39. Cleary also made similar comments in other public contexts that he thought Woebkenberg was overpaid for his position.

40. Cleary took steps to downgrade Woebkenberg's rating from "Excellent" to "Meets" without justification in the calendar year 2015.

41. In May 2016, Woebkenberg met with Przesmitzki and Cleary to challenge the "Meets" rating and to receive feedback which would help him understand why his rating deteriorated for no apparent reason.

42.    At this meeting Przesmitzki, Cleary and Woebkenberg agreed on additional "stretch" targets that Woebkenberg might be able to accomplish to obtain an "Excellent" rating.

43.    Although these "stretch" targets were agreed to, these items were never added to Woebkenberg's official evaluation template.

44.    In January 2017, at the direction of Cleary, Human Resource associate Jason Keller ("Keller") secretly and improperly altered Woebkenberg's 2016 objectives which had been established months before.

45.    In these altered objectives, Woebkenberg was being held to the "stretch goals" as the standard goals for his performance.

46.    Cleary was plainly setting up Woebkenberg for failure.

47.    Indeed, Przesmitzki admitted to Woebkenberg that Cleary had directed him to "build" a case of inappropriate behavior and inadequate performance to facilitate Woebkenberg's dismissal.

48.    In January 2017, Przesmitzki informed Woebkenberg that Cleary intended to give Woebkenberg a "Does Not Meet" rating.

49.    The threat that he would receive a "Does Not Meet" rating in 2016, as well as the above described hostile activities of Cleary caused Woebkenberg to file in February 2017 an internal complaint of age discrimination against Cleary.

50.     In March of 2017, Woebkenberg, Przesmitzki, and Keller met to review Woebkenberg's age discrimination complaint and his performance rating.

51.     Przesmitzki agreed to change Woebkenberg's rating to "Meets."

52.     Consistent with this change in rating, Keller restored the altered 2016 objectives to the original version.

53.     In addition, Przesmitzki's group was removed from Cleary's supervision and transferred to ASC corporate office in Houston for oversight.

54.     Keller informed Woebkenberg that the hostile actions described above were not motivated by age bias.

55.     Woebkenberg received "Meets" ratings for 2017 and 2018.

56.     In 2017, Przesmitzki's group reported to Ashraf Al-Tahini.

57.     In January 2019, Al-Tahini was replaced by Gaithan Muntasheri ("Muntasheri").

58.     Shortly after Muntasheri assumed leadership of Przesmitzki's group, Przesmitzki informed Muntasheri in Woebkenberg's presence that Woebkenberg was eligible to retire and that his value to the Company was in serving as a transitioning agent or mentor for younger scientists.

8

59. During the week of October 28, 2019, Muntasheri was in the Detroit facility and questioned Woebkenberg, asking "how things were going with CRC."

60. The Coordinating Research Council ("CRC") is a consortium of auto makers and energy companies who perform pre-competitive research of common interest.

61. Woebkenberg responded by stating that Aramco's presence on the board was due to Woebkenberg's presence as the Aramco representative.

62. Indeed, at the time Aramco was recruiting Woebkenberg, Aramco was first seeking membership on the CRC board.

63. The CRC informed Cleary and Przesmitzki at that time that CRC would have rejected Aramco's proposal to join the board were it not for Woebkenberg's efforts and affiliation with Aramco.

64. On November 5, 2019, ASC terminated Woebkenberg's employment.

65. ASC informed Woebkenberg that his termination was part of a bona fide reduction in force ("RIF").

66. At the same time Woebkenberg was terminated by a supposed RIF, Aramco hired a substantially younger person as a research scientist.

67.     Woebkenberg was the only employee from the Detroit Research Center selected for the RIF.

68.     For these reasons, the RIF was not bona fide, but rather was a pretext to terminate an older employee.

## COUNT I: VIOLATION OF THE ADEA—Disparate Treatment

69.     Plaintiff incorporates his allegations above by reference here.

70.     Plaintiff is a 54 year-old employee covered by the ADEA.

71.     Defendant is an employer within the meaning of the ADEA.

72.     Defendant singled out Plaintiff because of his age for inclusion in a RIF.

73.     Defendant falsely asserted that the Woebkenberg was terminated for "lack of work" and that the RIF was bona fide.

74.     The RIF was not bona fide because there was "no lack of work" for Woebkenberg.

75.     Moreover, Woebkenberg was the only Detroit Research Center employee terminated and he was replaced by a substantially younger individual.

76.     Defendant had open positions both before and after the RIF that Plaintiff was qualified to perform, but Plaintiff was not asked to consider transferring into one of these roles.

77.     Therefore, the RIF was not bona fide.

78.     As a result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to experience economic damages in the nature of lost wages and benefits.

### COUNT II-VIOLATION OF ELCRA-Disparate Treatment

79.     Plaintiff incorporates his allegations above by reference here.

80.     Plaintiff is a 54 year-old employee covered by the ELCRA.

81.     Defendant is an employer within the meaning of the ELCRA.

82.     Defendant singled out Plaintiff because of his age for inclusion in a RIF.

83.     Defendant falsely asserted that the Woebkenberg was terminated for "lack of work" and that the RIF was bona fide.

84.     The RIF was not bona fide because there was "no lack of work" for Woebkenberg.

85.     Woebkenberg was the only Detroit Research Center employee terminated and he was replaced by a substantially younger individual.

86.     Defendant had open positions both before and after the RIF that Plaintiff was qualified to perform, but Plaintiff was not asked to consider transferring into one of these roles.

87.     Therefore, the RIF was not bona fide.

11

88.     As a result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to experience economic damages in the nature of lost wages and benefits and non-economic damages in the nature of emotional distress, loss of reputation, outrage and humiliation and embarrassment.

## COUNT III:  VIOLATION OF ADEA-Retaliation

89.     Plaintiff incorporates his allegations above by reference here.

90.     Woebkenberg engaged in protected activity under the ADEA when he filed an age discrimination complaint in 2017.

91.     The Company had a statutory obligation not to retaliate against Woebkenberg because he engaged in protected activity.

92.     In violation of this statutory obligation, the Company retaliated against Woebkenberg by terminating his employment.

93.     As a result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to experience economic damages in the nature of lost wages and benefits.

## COUNT IV:  VIOLATION OF ELCRA-Retaliation

94.     Plaintiff incorporates his allegations above by reference here.

95.     Woebkenberg engaged in protected activity under the ELCRA when he filed an age discrimination complaint in 2017.

12

96. The Company had a statutory obligation not to retaliate against Woebkenberg because he engaged in protected activity.

97. In violation of this statutory obligation, the Company retaliated against Woebkenberg by terminating his employment.

98. As a result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to experience economic damages in the nature of lost wages and benefits and non-economic damages in the nature of emotional distress, loss of reputation, outrage and humiliation and embarrassment.

## COUNT V:  Fraud in the Inducement

99. Plaintiff incorporates his allegations above by reference here.

100. Woebkenberg was gainfully employed by Mercedes Benz from March 2009 to September 2014 in a management position earning an annual base salary of $121,308 plus a bonus of more than $10,000.

101. Woebkenberg' s employment with Mercedes Benz was secure and likely to continue throughout his work life.

102. ASC lured Woebkenberg away from his job with Mercedes Benz by making false statements of fact regarding ASC's employment practices.

103. In order to induce Woebkenberg to leave Mercedes Benz, ASC falsely stated to Woebkenberg that as an ASC employee he would receive annual merit increases of 4% to 6%.

13

Case 2:20-cv-10366-SJM-EAS   ECF No. 1, PageID.14   Filed 02/12/20   Page 14 of 16

104. These assertions of fact were false and ASC representatives making these statements knew the assertions were false or made the statements in reckless disregard of the truth.

105. These assertions were made for the purpose of inducing Woebkenberg to resign from his high paying, secure position with Mercedes Benz.

106. ASC representatives knew that Woebkenberg was likely to rely of these false assertions in making his decision to resign his employment with Mercedes Benz.

107. Woebkenberg did in fact rely of these false representatives in making his decision to resign his employment with Mercedes Benz.

108. Woebkenberg's reliance on the false representations of fact was reasonable.

109. Woebkenberg would not have resigned his employment with Mercedes Benz had he known the truth.

110. Had Woebkenberg not been fraudulently induced to resign his employment with Mercedes Benz, he would have remained employed by Mercedes Benz for the indefinite future.

111.   The fraud in the inducement has caused damage to Woebkenberg in the nature of lost wages in benefits he would have earned as Mercedes Benz had he not resigned his employment.

112.   Woebkenberg has experienced and will continue to experience non-economic damages as a result of the Company's fraudulent conduct

### Relief Sought

As a result of the ASC's violations of Woebkenberg's rights under both federal and state law, Plaintiff seeks the following relief and remedies:

- Lost wages and back pay;

- Lost future income;

- Compensatory damages for the emotional distress and harm to his dignity;

- Punitive, liquidated or exemplary damages as allowed;

- Attorney's fees and litigation costs;

- Other relief as deemed appropriate by the Court.

Respectfully submitted by:
**Pitt McGehee Palmer & Rivers**


By:/s/ *Michael L. Pitt*
Michael L. Pitt P24429
Robin B. Wagner P79408
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

Dated: February 12, 2020


## DEMAND FOR JURY BY TRIAL

Plaintiff, by and through his attorneys, Pitt McGehee Palmer & Rivers,

P.C., hereby demands a trial by jury of all issues in the within cause of action.

**Pitt McGehee Palmer & Rivers**

By: /s/ *Michael L. Pitt*
Michael L. Pitt P24429
Robin B. Wagner P79408
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

Dated: February 12, 2020

16